UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LOUIS VUITTON MALLETIER | § § § | |
| Plaintiff, | § § | |
| V. | § § | CASE NO. 5:11-cv-124 |
| EISENHAUER ROAD FLEA MARKET, INC., MILDRED G. CRAWFORD, BUEL Y. CRAWFORD, and PATRICIA D. WALKER, | § § § § § § | |
| Defendants. | § § | |

## ORIGINAL COMPLAINT

For its Complaint, Plaintiff LOUIS VUITTON MALLETIER (hereinafter "Louis Vuitton" or "Plaintiff"), by and through its undersigned counsel, avers and alleges as follows:

### I. NATURE OF THIS LAWSUIT

1. This is an action by Louis Vuitton against Defendants EISENHAUER ROAD FLEA MARKET, INC., MILDRED G. CRAWFORD, BUEL Y. CRAWFORD and PATRICIA D. WALKER (sometimes hereinafter collectively referred to as "Defendants") for contributory trademark infringement. Simply put, Defendants - the owners, operators, landlords, partners, managing agents and/or principals of the Eisenhauer Road Flea Market (the "Market") – have consistently and knowingly allowed and enabled vendors, tenants, sub-tenants, lessees, sub-lessees, assignees, and/or any other occupants at the Market (collectively referred to as "Lessees") to sell and offer for sale merchandise bearing counterfeits of trademarks owned by Louis Vuitton.

1

## II. JURISDICTION AND VENUE

2. The claim herein arises under the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* for contributory infringement of trademarks registered in the United States Patent and Trademark Office.

3. This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332 and 1338.

4. This Court has personal jurisdiction over Defendants in that Defendants: (a) reside in this District and the State of Texas; (b) are purposefully, systematically and continuously engaged in substantial and not isolated activities in this District and the State of Texas for the purpose of seeking some benefit, advantage or profit; and/or (c) were purposefully, systematically and continuously engaged in substantial and not isolated activities in this District and the State of Texas for the purpose of seeking some benefit, advantage or profit. In addition, all of the Defendants have purposefully availed themselves of the privileges and benefits of conducting business in this District and in the State of Texas. None of the Defendants' contacts with Texas has been random, isolated or fortuitous. Moreover, the vast majority of the conduct complained of herein occurred in this District and the State of Texas. Furthermore, Defendants' liability to Louis Vuitton arises from, and/or is related to, Defendants' activities within this District and the State of Texas.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## III. INTRADISTRICT ASSIGNMENT

6. Assignment to the San Antonio Division of this Court is proper because the action arose in San Antonio, Texas, specifically at the Market located at 3903 Eisenhauer Road, San Antonio, Texas 78218.

## IV. THE PARTIES

7.  Plaintiff Louis Vuitton is a *societe anonyme* organized and existing under the laws of France.

8.  Defendant EISENHAUER ROAD FLEA MARKET, INC. (hereinafter "Eisenhauer Road"), is a corporation with its principal place of business in this District. Defendant Eisenhauer Road owns the vast majority of the land, buildings, structures and fixtures at the Market (sometimes referred to as the "Property"). Defendant Eisenhauer Road is also the entity that enters into leases with the Market's Lessees. Defendant Eisenhauer Road can be served with process by serving its Registered Agent, David Clay Snell, at 8626 Tesoro Drive, Suite 500, San Antonio, Texas 78217-6233.

9.  Defendant MILDRED G. CRAWFORD ("Ms. Crawford") is an individual who resides at 9107 Vinewood Drive, Dallas, Texas 75228, and does business in this District at the Market. Ms. Crawford is, or has been, the President and a Director of Eisenhauer Road and is, or has been, one of the Market's principal operators. She is also the wife of co-Defendant BUEL Y. CRAWFORD. Ms. Crawford is, or has been, one of the moving, active and conscious forces behind the operations, actions and inaction of Eisenhauer Road and the Market. Among other things, Ms. Crawford manages, supervises, directs, controls, ratifies, authorizes and/or participates in, the operations, actions and inaction of Eisenhauer Road and the Market, or has done so in the past. As one of the primary faces of the Market, Ms. Crawford is one of the persons that has received notices (from intellectual property owners such as Louis Vuitton) of counterfeiting activity taking place at the Market. On information and belief, a substantial portion of the profits made by Eisenhauer Road and the Market have ultimately flowed directly or indirectly to Ms. Crawford.

10.     Defendant BUEL Y. CRAWFORD ("Mr. Crawford") is an individual who resides with his wife (Ms. Crawford) at 9107 Vinewood Drive, Dallas, Texas 75228, and does business in this District at the Market. He is, or has been, the Vice-President and a Director of Eisenhauer Road and is, or has been, one of the Market's principal operators. Mr. Crawford is, or has been, one of the moving, active and conscious forces behind the operations, actions and inaction of Eisenhauer Road and the Market. Among other things, Mr. Crawford manages, supervises, directs, controls, ratifies, authorizes and/or participates in, the operations, actions and inaction of Eisenhauer Road and the Market, or has done so in the past. As one of the primary faces of the Market, Mr. Crawford is one of the persons that has received notices (from intellectual property owners such as Louis Vuitton) of counterfeiting activity taking place at the Market. On information and belief, a substantial portion of the profits made by Eisenhauer Road and the Market have ultimately flowed directly or indirectly to Mr. Crawford.

11.     Defendant PATRICIA D. WALKER ("Walker") is an individual who resides in San Antonio, Texas, and does business in this District at the Market. Walker is, or has been, the manager of the Market. She is, or has been, one of the key operators of the Market and has worked out of an office at the Market. Walker is, or has been, the Secretary and Treasurer of Eisenhauer Road. Defendant Walker is, or has been, one of the moving, active and conscious forces behind the operations, actions and inaction of Eisenhauer Road and the Market. She manages, supervises, directs, controls, ratifies, authorizes and/or participates in, the operations, actions and inaction of Eisenhauer Road and the Market, or has done so in the past. Among other things, Walker is, or has been, in charge of the Market's relationship with its Lessees and has functioned as the primary contact person at the Market with respect to the leasing of space from Eisenhauer Road. Defendant Walker has had long-standing relationships with many of the

Market's Lessees, including some of its most prolific counterfeiters. As one of the most visible faces at the Market, Walker has repeatedly been advised by intellectual property owners (such as Louis Vuitton) and law enforcement of counterfeiting activity taking place at the Market. Walker is, or has been, the "right hand" of Defendants Eisenhauer Road, Ms. Crawford and Mr. Crawford. At all times material to this action, Defendant Walker has kept Defendants Eisenhauer Road, Ms. Crawford and Mr. Crawford apprised of the events that transpired at the Market, including the counterfeiting activity that has taken place at the Property, as well as the notices of such activity received from intellectual property owners and the authorities. On information and belief, a substantial portion of the profits made by Eisenhauer Road and the Market have ultimately flowed directly or indirectly to Defendant Walker.

12.     At all times mentioned in this Complaint, each of the Defendants was the agent of each of the other Defendants, and in doing the things alleged in this Complaint was acting within the course and scope of such agency. Additionally, at all times mentioned in this Complaint, each of the Defendants aided and abetted each of the other Defendants in doing the things alleged in this Complaint. Moreover, each of the Defendants informs (and informed) the other Defendants of their actions, inaction, and the unlawful activities transpiring at the Market. Lastly, to the extent that Eisenhauer Road and the Market has had other culpable owners, shareholders operators, managers, officers and/or directors during the operative period of time that have not been named herein, Louis Vuitton hereby reserves the right to amend its Complaint to add such parties to this action.

## V. LOUIS VUITTON'S PRODUCTS AND INTELLECTUAL PROPERTY

13. Louis Vuitton is one of the most well-known manufacturers of luxury items. It produces, among other things, high quality luggage, handbags, and wallets. Such items sell for hundreds of dollars, and in many cases, thousands of dollars.

14. Louis Vuitton is the exclusive distributor of its products, all of which bear one or more of Louis Vuitton's trademarks registered with the United States Patent and Trademark Office. Louis Vuitton's trademarks have been used to identify Louis Vuitton products in the United States and other parts of the world.

15. Commencing at least as early as 1931, Louis Vuitton has continued to register its trademarks in the United States Patent and Trademark Office, and to use its rightfully owned trademarks in interstate commerce in connection with its sale of its luxury products. At present, Louis Vuitton's U.S. trademark registrations remain in force and are, in most cases, incontestable.

16. Louis Vuitton is the owner of, *inter alia*, the right, title and interest in and to the following federally registered trademarks: the Toile Monogram – U.S. Trademark Registration No. 297,594 of September 20, 1932, and No. 1,770,131 of May 11, 1993; LOUIS VUITTON – U.S. Trademark Registration No. 1,045,932 of August 10, 1976, No. 1,615,681 of October 2, 1990, No. 1,990,760 of August 6, 1996, and No. 2,909,003 of December 7, 2004; LOUIS VUITTON MALLETIER A PARIS – U.S. Trademark Registration No. 1,615,681 of October 2, 1990; LV – U.S. Trademark Registration No. 286,345 of August 25, 1931, No. 1,519,828 of January 10, 1989, No. 1,653,662 of August 13, 1991, No. 1,794,905 of September 28, 1993, No. 1,938,808 of November 28, 1995, No. 2,361,695 of June 27, 2000, and No. 2,909,002 of December 7, 2004; Epi Leather – U.S. Trademark Registration No. 1,655,564 of September 3,

1991, No. 2,098,630 of September 23, 1997, and No. 2,263,903 of July 27, 1999; Flower – U.S. Trademark Registration No. 2,177,828 of August 4, 1998; Flower in a Circle – U.S. Trademark Registration No. 2,181,753 of August 18, 1998; Flower in a Diamond – U.S. Trademark Registration No. 2,773,107 of October 14, 2003; and Damier – U.S. Trademark Registration No. 2,378,388 of August 22, 2000, and No. 2,421,618 of January 16, 2001 (hereinafter collectively referred to as the "Louis Vuitton Trademarks").

17. The registration of these marks constitutes prima facie evidence of their validity and conclusive evidence of Louis Vuitton's exclusive right to use the Louis Vuitton Trademarks in connection with the goods identified therein and other commercial goods, and is sufficient notice to Defendants and their Lessees of Louis Vuitton's ownership and exclusive rights in and to the Louis Vuitton Trademarks.

18. The Louis Vuitton Trademarks are famous, entitling them to substantial protection under the law.

19. Louis Vuitton's goods, so marked, have been and are now recognized and exclusively associated by the fashion industry, consumers and the general public as those of Louis Vuitton.

20. While genuine Louis Vuitton products are sold throughout the United States, they are sold only through Louis Vuitton stores, Louis Vuitton boutiques within department stores, such as Saks, Neiman Marcus, and Bloomingdales, and the louisvuitton.com web site.

21. The Louis Vuitton Trademarks have been continuously used by Louis Vuitton, and have never been abandoned.

22. As a result of Louis Vuitton's extensive advertising, the widespread sale of Louis Vuitton merchandise, and the fame that the Louis Vuitton Trademarks have achieved, the goodwill associated with the Louis Vuitton Trademarks is of inestimable value to Louis Vuitton.

23. The Louis Vuitton Trademarks are highly distinctive and arbitrary, and have become associated by the public with products of the highest quality and reputation.

## VI. THE MARKET

24. The Market was established many years ago. It is an air-conditioned indoor flea market that sits on more than six (6) acres of land. It is open Wednesdays through Sundays, and it is the largest indoor flea market in San Antonio. The Market has over one hundred (100) retail stores, a food court and plenty of free parking for the many shoppers that frequent the Market. Thousands of people visit the Market each month.

## VII. DEFENDANTS' UNLAWFUL CONDUCT

25. As Defendants know, the Market is a hot bed for illicit activity. Consistent with the "hear no evil, see no evil" mentality that Defendants have employed at the Market, Defendants have allowed many of their Lessees to sell or offer for sale merchandise bearing counterfeits of the Louis Vuitton Trademarks.

26. Defendants knew, know, had reason to know, or have reason to know, of their Lessees' trademark violations.

27. In plain view, law enforcement agencies have seized counterfeit items from Lessees at the Market, including goods bearing counterfeits of the Louis Vuitton Trademarks. In plain view, law enforcement has arrested several of the Market's counterfeiting Lessees, including those engaged in the sale of goods bearing counterfeits of the Louis Vuitton Trademarks.

28. In plain view, some of Defendants' counterfeiting Lessees have also been served with cease and desist letters by intellectual property owners such as Louis Vuitton. In plain view, some of these Lessees have chosen to voluntarily surrender their goods bearing counterfeits of trademarks to the agents of the trademark owners.

29. While such activities were often open and/or obvious, on several occasions, Defendants were notified both orally and in writing of some of the counterfeiting taking place at the Market, including the counterfeiting of the Louis Vuitton Trademarks. Some of the notices from Louis Vuitton to Defendants specifically informed Defendants and the Market of certain Lessees who had repeatedly sold and offered for sale goods bearing counterfeit Louis Vuitton Trademarks. Yet, Defendants failed to rid the Market of Defendants' counterfeiting Lessees.

30. Although Defendants collectively own, operate, supervise, manage and control the Market, they have not done so in a manner to prevent the sale at the Market of items bearing counterfeits of intellectual property. Instead, Defendants have acted to assist, facilitate, enable, aid and abet, and/or conceal such unlawful activity. On information and belief, on one occasion when the San Antonio Police Department was at the Market to arrest some of its counterfeiting Lessees and seize their bogus goods, Defendant Walker quickly walked around the Market to alert several of the Market's counterfeiters to shut down their booths before the police got to them.

31. Besides aiding and abetting their counterfeiting Lessees and/or repeatedly looking the other way when counterfeiting is taking place at the Property, Defendants have materially contributed to the counterfeiting activities taking place at the Market by providing the site and facilities and/or the environment and market for the Lessees' unlawful conduct.

32. Defendants provide all of the services necessary for their Lessees to operate on the Property. Among other things, the Lessees at the Market are provided with basic requirements such as space, security, parking, maintenance of the Market's grounds (including cleaning and repair), restrooms and concessions. Moreover, Defendants have advertised and promoted the Market, and have worked to attract customers to the Market.

33. Furthermore, Defendants have failed to implement rules or employ practices and procedures that would reduce or eliminate the counterfeiting occurring at the Market. While it obviously does not take an expert to figure out that low priced, cheap looking "Louis Vuitton" items displayed at the Market do not bear genuine Louis Vuitton Trademarks, Defendants have failed to: a) hire investigative firms to identify items bearing counterfeits of the Louis Vuitton Trademarks; or b) promptly evict Lessees at the Market who have been engaged in the sale of items bearing counterfeits of the Louis Vuitton Trademarks.

34. Defendants employ personnel to patrol and monitor the Market. However, such personnel assist in the unlawful conduct of the Market's Lessees by failing to take affirmative steps to curb, prohibit and/or prevent the sale of items bearing counterfeits of the Louis Vuitton Trademarks.

35. The illegal activity which has taken place at the Market has occurred despite the fact that the Defendants and the Market have (and have had) the right and ability to control their Lessees. For example, and without limitation, Defendants require the Market's Lessees to: 1) refrain from selling certain types of products (such as tobacco and smoking paraphernalia); and 2) execute and fully comply with written lease agreements. In fact, Defendants specifically reserve the right to remove Lessees from the Market if they fail to abide by the terms of their lease agreements. In short, the Market is a controlled environment where Defendants and the

Market have comprehensive rules governing what Lessees can sell and how Lessees must conduct themselves while at the Market.

36. Louis Vuitton has never authorized the sale of Louis Vuitton merchandise or the use of the Louis Vuitton Trademarks at the Market and has so notified Defendants on multiple occasions. Nevertheless, Defendants have allowed counterfeiting to occur on the Property despite Louis Vuitton's (and other intellectual property owners') pleas to Defendants to "clean up" the Market, and even though Defendants knew, know or should have known that counterfeiting is against the law.

37. Defendants know, knew or should have known that a substantial amount of items bearing counterfeits of the Louis Vuitton Trademarks have been (and are being) sold or offered for sale at the Market.

38. Defendants have failed to supervise their premises and comply with their legal obligations to curb counterfeiting at the Market because they would make less money if they were to evict their counterfeiting Lessees. In fact, if Defendants kicked out all of the Market's counterfeiters, Defendants' revenues and profits would plummet.

39. Defendants have been aware of, materially contributed to, and obtained a financial benefit from the sale of merchandise bearing counterfeits of intellectual property at the Market (including the Louis Vuitton Trademarks). Defendants reap substantial financial benefits derived from the "draw" of counterfeit items at the Market, including, but not limited to, increased: customer traffic; food court sales; numbers of Lessees; storefront/booth rental revenue; and value of their business and the Property. Defendants are financially motivated to "turn a blind eye" to counterfeiting at the Market, or to affirmatively assist in the counterfeiting and infringement and protect their counterfeiting Lessees.

40. By engaging in their unlawful conduct, Defendants have enjoyed the financial fruits of continuing to do business with their counterfeiting Lessees.

41. Under the circumstances, Defendants had (and have) an obligation to take all steps necessary to curb or end the counterfeiting of the Louis Vuitton Trademarks at the Market. However, they have failed to do so. Indeed, the counterfeiting of the Louis Vuitton Trademarks by Lessees at the Market continues to this very day.

42. Defendants have acted with reckless disregard for Louis Vuitton's rights and/or were willfully blind in connection with their unlawful actions and inaction in this matter. Alternatively, Defendants have intentionally allowed counterfeiting activities to occur and continue at the Market. Therefore, this case constitutes an exceptional case under 15 U.S.C. § 1117(a); likewise, it entitles Louis Vuitton to all of the remedies set forth in 15 U.S.C. §§ 1117(b) and (c).

43. The unlawful use by the Market's Lessees of the Louis Vuitton Trademarks is likely to cause consumers, the public and the trade to erroneously believe that the goods they sold are authorized, sponsored, or approved by Louis Vuitton when, in fact, they are not. By using counterfeits of the Louis Vuitton Trademarks, Defendants' Lessees have traded on the goodwill and reputation of Louis Vuitton, and have created the false impression that their goods are Louis Vuitton's legitimate products.

44. Among other things, the distribution, sale, offers of sale, display, promotion, marketing and advertisement by Defendants' Lessees of their products bearing counterfeits of the Louis Vuitton Trademarks has and will: reflect adversely on Louis Vuitton as the believed source of origin thereof; hamper continuing efforts by Louis Vuitton to protect its outstanding

reputation for high quality, originality and distinctive goods; and tarnish the goodwill and demand for genuine Louis Vuitton merchandise.

45. Defendants have contributed to the disparagement of Louis Vuitton, its Louis Vuitton Trademarks, and its products by allowing the Market's Lessees to create a false association between their goods (bearing counterfeits of the Louis Vuitton Trademarks) and Louis Vuitton's genuine goods.

46. The counterfeiting of the Louis Vuitton Trademarks at the Market is likely to cause, is causing and will continue to cause a likelihood of confusion, deception and mistake on the part of consumers, the public and the trade. This confusion causes, and will continue to cause, irreparable harm to Louis Vuitton and dilutes the distinctive quality of the Louis Vuitton Trademarks. Accordingly, Louis Vuitton has no adequate remedy at law and Defendants must be enjoined from any further conduct contributing in any way to the counterfeiting and infringement of the Louis Vuitton Trademarks.

47. Defendants have been unjustly enriched by allowing their Lessees to illegally use and misappropriate Louis Vuitton's intellectual property.

48. Moreover, Louis Vuitton has suffered harm as a result of the acts of Defendants in an amount thus far not determined. The injuries and damages sustained by Louis Vuitton have been directly and proximately caused by Defendants' wrongful conduct.

### VIII. CLAIM FOR CONTRIBUTORY TRADEMARK INFRINGEMENT
#### (Against All Defendants)

49. Louis Vuitton hereby incorporates by reference the allegations set forth above in paragraphs 1 through 48.

50. The use of the Louis Vuitton Trademarks at the Market by several of Defendants' Lessees infringes upon Louis Vuitton's federally-registered marks (i.e., the Louis Vuitton Trademarks) in violation of section 32(1) of the Trademark Act of 1946 as amended (the "Lanham Act"), 15 U.S.C. § 1114(1).

51. The unauthorized use of the Louis Vuitton Trademarks at the Market by several of Defendants' Lessees is likely to cause and is causing confusion, mistake and deception.

52. Through their actions, inaction and conduct, Defendants have materially contributed to the above-described counterfeiting and infringement of the Louis Vuitton Trademarks. Among other things, Defendants have continued to supply the site, space, facilities and a market place to Lessees that Defendants knew or should have known were selling or offering for sale products bearing counterfeits of the Louis Vuitton Trademarks. Hosts such as Defendants who permit their Lessees to use Defendants' premises cannot remain willfully blind to their Lessees' directly infringing acts.

53. Defendants' conduct constitutes contributory infringement of Plaintiff's Louis Vuitton Trademarks.

54. By reason of the foregoing, Defendants are liable to Louis Vuitton for any and all of the remedies available to Louis Vuitton under 15 U.S.C. §§ 1116 and 1117 of the Lanham Act.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Louis Vuitton demands Judgment against Defendants, and each of them, jointly and severally, as follows:

A. That pursuant to and in accordance with 15 U.S.C. § 1116, preliminary and permanent injunctions be issued enjoining the Defendants and each of them, and their respective

agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from, directly or indirectly: 1) counterfeiting or infringing in any manner any of the Louis Vuitton Trademarks; 2) causing, contributing to, enabling, facilitating, allowing, tolerating, or participating in the counterfeiting or infringement of any of the Louis Vuitton Trademarks; 3) allowing Lessees at the Market who have been or are currently engaged in the sale or offer for sale of merchandise bearing counterfeits of the Louis Vuitton Trademarks to continue doing business at the Market; 4) using any reproduction, counterfeit, copy or colorable imitation of the Louis Vuitton Trademarks in any publicity, advertisement, importation, promotion, display, distribution, sale, or offer for sale of goods or otherwise pertaining to the Market; 5) using the Louis Vuitton Trademarks in a manner calculated to falsely represent, or which has the effect of falsely representing, that products sold at the Market are sponsored by, authorized by, or in any way associated with Louis Vuitton; and 6) otherwise unfairly competing with Louis Vuitton.

      B.    That Louis Vuitton be awarded statutory damages from each of the Defendants in an amount of up to $2,000,000 per counterfeited mark per each type of goods (as provided by 15 U.S.C. § 1117(c) of the Lanham Act as amended), or, at Louis Vuitton's election, that Defendants be required to account to Louis Vuitton for all damages and/or profits resulting from the unlawful activities of Defendants and/or their Lessees, and that the award to Louis Vuitton be trebled as provided for under 15 U.S.C. §1117.

      C.    That Louis Vuitton be awarded a sum that is just under the facts and circumstances of this action in accordance with 15 U.S.C. § 1117.

      D.    That Louis Vuitton be awarded pre-judgment interest in accordance with 15 U.S.C. §1117.

E.  That Louis Vuitton be awarded its costs and expenses of this action, including, but not limited to, Louis Vuitton's attorneys' fees, investigators' fees and other costs as provided for under 15 U.S.C. § 1117.

F.  That Louis Vuitton be awarded all other and further relief as the Court may deem just and proper under the facts and circumstances of this case.

Dated: February 11, 2011

Respectfully submitted,

BY: s/Steven M. Abbott
    Steven M. Abbott
    State Bar No. 00797825
    Federal I.D. No. 9027
Attorney-in-Charge for Plaintiff
Louis Vuitton Malletier
2727 Allen Parkway, Suite 1675
Houston, Texas 77019
Telephone: (713) 467-1669
Facsimile: (713) 467-4936
Email: abbottsteven@hotmail.com

OF COUNSEL FOR PLAINTIFF
LOUIS VUITTON MALLETIER:
Harry R. Schafer (Florida Bar No. 508667)
(*seeking admission pro hac vice*)
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard
Suite 1100 – Miami Market
Miami, Florida 33131-4327
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
Email: hrs@kennynachwalter.com