IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LOUIS VUITTON MALLETIER | § | |
|     Plaintiff, | § | CIVL ACTION |
| | § | |
| v. | § | SA-11-CV-00124-HLH |
| | § | |
| EISENHAUER ROAD FLEA MARKET, | § | |
| INC., BRUCE L. GORE, AND PATRICIA | § | |
| D. WALKER, | § | |
|     Defendants. | § | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.   STANDARD OF REVIEW ........................................................................................... 1

II.  ARGUMENT AND AUTHORITIES ............................................................................. 2

    A.  Summary of the Argument ................................................................................ 2

    B.  Plaintiff Cannot Prove Defendants had the Necessary Actual Control and Contemporary Knowledge Required for Contributory Infringement ......................... 2

        i.  Evidence in this Case Shows Defendants did not have the Necessary Control of Alleged Infringers ............................................................................... 3

        ii.  Plaintiff's Have No Evidence Defendants Had Contemporaneous Knowledge or Willful Blindness of Specific Infringing Sales or Offers for Sale ................ 6

        iii. Evidence Conclusively Shows Individual Defendants are not Liable in the Capacity in Which They Were Sued ............................................................ 8

    C.  Evidence Conclusively Shows Defendants Acted in Good Faith and Therefore Lack Necessary Intent for Treble Damages and Attorneys' Fees Under § 1117(b) and Willfulness under § 1117(c) ................................................................................ 9

III. CONCLUSION ............................................................................................................ 10

PRAYER ............................................................................................................................ 10

CERTIFICATE OF SERVICE .............................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................................... 1

*Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472 (Cir. 11th 1991) ..................... 9

*Deutsch v. Arnold*, 98 F.2d 686 (2nd Cir. 1938) ........................................................................... 4

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143 (7th Cir. 1992) 2, 6, 7, 8, 9

*Inwood Labs., Inc. v. Ives Lab., Inc.*, 456 U.S. 844 (1982) ............................................. 3, 5, 8, 10

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 2011 WL 4014320 (9th Cir. 2011) ..... 2, 3

*Malletier v. The Flea Market, Inc.*, 2009 WL 1625946 (N.D. Cal. June 10, 2009) ....................... 4

*Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231 (11th Cir. 2007) ....... 6

*Polo Ralph Lauren Corp. v. Chinatown Gift Shop*, 855 F.Supp. 648 (S.D.N.Y. 1994) ................. 4

*Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010). ....................................................... 6, 8

**Statutes**

15 U.S.C. § 1117 ...................................................................................................................... 1, 10

**Rules**

F<small>ED</small>. R. C<small>IV</small>. P 56(a) .................................................................................................................... 1

# LIST OF EXHIBITS

**EXHIBIT A**   Deposition Excerpts, Bruce L. Gore, October 20, 2011.

**EXHIBIT B**   Deposition Excerpts, Patricia D. Walker, October 21, 2011.

**EXHIBIT C**   Deposition Excerpts, Kenneth C. Klug, October 26, 2011.

**EXHIBIT D**   Deposition Excerpts, Stephanie Voyles, October 25, 2011.

**EXHIBIT E**   Deposition Excerpts, Joel Voyles, October 25, 2011.

**EXHIBIT F**   Defendants' Rental Agreements, Plaintiff's Deposition Exhibit 34.

**EXHIBIT G**   ISC Report, December 29, 2005, Plaintiff's Deposition Exhibit 1 (LV00032 – 35).

**EXHIBIT H**   Plaintiff's Responses to Defendants' First Set of Interrogatories, Defendants' Deposition Exhibit 26.

**EXHIBIT I**   Emails between Sanders and Klug, August 29, 2005, Defendants' Deposition Exhibit 25 (LV 000656 – 664).

**EXHIBIT J**   ISC Report, June 24, 2009, Plaintiff's Deposition Exhibit 6 (LV 00046 – 48).

**EXHIBIT K**   Letter from Pantalony to Snell w/ISC Reports, October 13, 2010, Plaintiff's Deposition Exhibit 27 (LV 000179 – 206).

**EXHIBIT L**   Letter from Klug to Eisenhauer Flea Market, June 26, 2009, Plaintiff's Deposition Exhibit 11 (LV 000157 – 158).

**EXHIBIT M**   Letter from Pantalony to Walker, March 19, 2010, Plaintiff's Deposition Exhibit 14 (LV 000163 – 166).

**EXHIBIT N**   Memo to Vendors of Eisenhauer Road Flea Market from Management, Plaintiff's Deposition Exhibit 18 (LV 000173 – 174).

**EXHIBIT O**   Vendor Agreements, Plaintiff's Deposition Exhibit 19 (E000054–59; 82–97; 6828–6834; 6843–44).

**EXHIBIT P**   Termination of Lease Letters from Eisenhauer Road Flea Market (E009513–20).

**EXHIBIT Q**   Letter from Snell to Pantalony, August 5, 2010, Plaintiff's Deposition Exhibit 24 (LV 00171–174).

**EXHIBIT R**   Letter from Pantalony to Snell, September 3, 2010, Plaintiff's Deposition Exhibit 25 (LV 00175–176).

**EXHIBIT S**   Eisenhauer Road Flea Market Advertisements, Plaintiff's Deposition Exhibits 38 and 39 (E000098 - 99).

**EXHIBIT T**   Investigative Services Corporation Website Information, Defendants' Deposition Exhibit 4

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Louis Vuitton filed this lawsuit against Eisenhauer Road Flea Market, Inc., a Texas corporation, (the "Market"), Bruce L. Gore, and Patricia D. Walker (collectively "Defendants"), alleging a handful of tenants at the Market sold, among other items, a small number of goods bearing counterfeit or infringing Louis Vuitton trademarks.  Plaintiff did not sue *any* tenants alleged to have *directly* infringed Louis Vuitton's trademarks, nor did it sue any manufacturer, supplier, or distributor.  Appendix ¶ 5.  Instead, Plaintiff argues that the Market, a *passive* landlord, should be held liable for contributory infringement of sales made by the independent tenants.  Furthermore, Plaintiff alleges Bruce L. Gore and Patricia D. Walker are individually liable because they are President and Secretary, respectively, of the Market.  This Motion for Summary Judgment is sought on three grounds:

1. Evidence **conclusively** shows Defendants did not have the necessary control or contemporaneous knowledge to be liable for contributory infringement;

2. Plaintiff has **no evidence** concerning *any* liability for Bruce Gore or Patricia Walker, individually, because the Market had the exclusive right to lease space and evict tenants; and

3. Plaintiff has **no evidence** Defendants provided services to tenants with the intent that tenants would use those services to sell counterfeit Louis Vuitton goods, therefore Plaintiff cannot obtain treble damages or attorneys' fees under section 1117(b)(2) or willfulness under section 1117(c).

### I. STANDARD OF REVIEW

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P 56(a).  The moving party must specify the basis of its motion and "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

1

## II. ARGUMENT AND AUTHORITIES

### A. Summary of the Argument

This lawsuit turns on the question of when a landlord may be held liable for trademark infringement by a tenant. While Defendants dispute the viability of Plaintiff's cause of action under the Lanham Act, *see* Docket No. 38, some courts have liberally, and arguably impermissibly, extended the Supreme Court's contributory liability standard to the landlord/tenant relationship. *See e.g.*, *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 2011 WL 4014320 (9th Cir. 2011). Even applying the Ninth Circuit's judicially created "extent of control" test, *id.*, Plaintiff cannot meet its burden because it cannot prove Defendants had the necessary control or contemporaneous knowledge over tenant's alleged counterfeiting activities. Importantly, the Fifth Circuit has not, nor has any District Court within the Fifth Circuit, analyzed contributory trademark infringement in the landlord/tenant context, much less extended liability to a landlord in these circumstances.

Here, with no evidence the Defendants were anything more than a landlord, Plaintiff seeks to expand the scope of secondary liability to the Market, and its officers, in order to force Defendants to assist with, and make Defendants responsible for, policing Plaintiff's marks. Trademark holders cannot rely on theories of secondary infringement to require landlords to be guardians of Louis Vuitton's commercial interests. *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992). The law and the facts of this case do not support a finding of liability, much less intent or willfulness, against the Market and its officers. In fact, Defendants should be *lauded* for their cooperation and efforts to stem alleged counterfeiting at the behest of Plaintiff Louis Vuitton. Appendix ¶¶ 11–15.

### B. Plaintiff Cannot Prove Defendants had the Necessary Actual Control and Contemporary Knowledge Required for Contributory Infringement

The Supreme Court has recognized contributory trademark infringement when "a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Labs., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 854 (1982).  There is no evidence, or even an allegation, of inducement in this case; therefore any liability for Defendants must be based on the second prong.  While no "product" was supplied by the Defendants in this case, some courts have liberally, and arguably impermissibly, extended the second prong of contributory liability to the landlord/tenant relationship, applying the "extent of control" test.  *See e.g.*, *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 2011 WL 4014320 (9th Cir. 2011). Thus, liability in this case turns on two main issues: Defendants' actual control and contemporaneous knowledge of infringing activities.

    i. **Evidence in this Case Shows Defendants did not have the Necessary Control of Alleged Infringers**

Despite allegations of control, the only evidence relating to Defendants' "control" of the alleged counterfeiters is that the Market has the power to evict tenants.  In fact, it is simpler to state the evidence Plaintiff does not have: 1) no evidence Defendants ran the tenant's business; 2) no evidence Defendants told tenants which products to sell; 3) no evidence Defendants were in charge of ordering tenant's products, much less tenant's alleged counterfeit products; and 4) no evidence Defendants' encouraged or promoted the sale of allegedly counterfeit items.  While the Market advertised the existence of the Market, the Market never advertised "Louis Vuitton" or advertised for specific vendors.  **Exhibit S**.  Additionally, rent for each tenant is set at approximately $1.50 per square foot, meaning the Market does not make any more or less money depending on the amount of sales.  Appendix A, ¶ 4.

Case law is clear that a mere landlord/tenant relationship is insufficient to establish contributory liability.  See *Polo Ralph Lauren Corp. v. Chinatown Gift Shop*, 855 F.Supp. 648, 650 (S.D.N.Y. 1994) ("A landlord is neither automatically liable for the counterfeiting of a tenant, nor is the landlord automatically shielded from liability."); *Malletier v. The Flea Market, Inc.*, 2009 WL 1625946, at *3 (N.D. Cal. June 10, 2009) (unpublished) (noting there is no case law holding a landlord liable simply for leasing space to a tenant); *see also Deutsch v. Arnold*, 98 F.2d 686, 688 (2nd Cir. 1938) (rejecting a claim against a landlord for secondary copyright infringement because "something more than the mere relation of landlord and tenant must exist to give rise to a cause of action by plaintiffs against these defendants for infringement . . . on the demised premises.").[1]  "Property ownership alone does not establish that Defendant exercised control over the sale of the infringing products." *Malletier*, 2009 WL 1625946, at *3.  As such, there is no legal maxim that attaches strict liability to a landlord for alleged counterfeiting activities of a tenant.

In contrast to Plaintiff's conclusory allegations, evidence in this case highlights the lack of actual control Defendants had over the alleged counterfeiting sales by tenants.  The first report produced by Plaintiff disclosed a law enforcement raid of a former tenant of the Market. **Exhibit G**.  Law enforcement raided the tenant's space in the Market, but also raided two different storage units and the personal home of the tenant, where law enforcement seized $750,000.  **Exhibit G.** Plaintiff's own director of Criminal Enforcement, Kenneth Klug, recognized alleged counterfeit Louis Vuitton items were discovered in "residences and storage areas and vehicles" outside the control of Defendants.  **Exhibit C**, at 40:5 – 20.  Clearly,

---

[1] While copyright cases involving claims of contributory liability against landlords can be helpful, it is important to note that contributory liability under trademark law is a much narrower test than under copyright law, and contributory liability is much less likely to apply for trademark infringement.  *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 437 n.18 (1984).

Defendants have no control over the personal residences, vehicles, and off-site storage facilities owned or leased by tenants. Common sense dictates a finding that Defendants had no *actual* control over the above tenant and the sale of counterfeit items.

The above referenced raid is important in understanding "control" in light of the contributory liability standard put forward under *Inwood*. In *Inwood*, the defendant manufactured a generic drug that pharmacists used instead of the brand name drug; however, the pharmacists sold the generic drug under the brand name's trademark. *Inwood*, 456 U.S. at 850–52. The owner of the brand name trademark alleged defendant induced pharmacists to do this behavior, or alternatively, continued to supply the drug after knowledge of pharmacists' use in switching out the drugs. *Id.* Clearly the manufacturer and distributor of the drug, the very product that served as the basis for infringement, "controlled" the use of its product in relation to whom it sold or distributed the drug. This control is significantly distinguishable, and far more causal, than the control the Market had over the former tenant identified in **Exhibit G.** Perhaps if Defendants were accused of supplying the counterfeit items, or even products necessary for the making of the allegedly counterfeit items, Plaintiff's argument would be legitimate; however, that has not been alleged.

It is likely this nature of control that drove Louis Vuitton's investigators to request tenants to identify their suppliers and where the tenants obtained the alleged counterfeit items. *See e.g.,* **Exhibit K**, at LV000183, 187, 192. There is clearly a causal and control link between distributors of counterfeit Louis Vuitton items and the tenants who offer them for sale; far different than the "control" exhibited by a passive landlord over a tenant. Removing a tenant from the Market does nothing to stop the chain or supply of counterfeit Louis Vuitton goods. Moreover, punishing the Defendants does nothing to stop the chain or supply of counterfeit Louis Vuitton goods.

The case law does not support extending contributory liability to a passive landlord such as the Market, or the Market's officers.  Clearly, Defendants do not actively control the shops of its tenants, nor are Defendants in the chain of distribution of tenant's alleged counterfeit Louis Vuitton items.  The law does not allow for such tangential liability and Defendants are entitled to summary judgment on Plaintiff's claim.

### ii. Plaintiff's Have No Evidence Defendants Had Contemporaneous Knowledge or Willful Blindness of Specific Infringing Sales or Offers for Sale

Liability for contributory infringement "may" apply if a plaintiff can prove a defendant "knew or had reason to know" of infringement. *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992).  The level of knowledge required for contributory trademark infringement is a "narrow standard" which places a "high burden" on the plaintiff. *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107–08 (2d Cir. 2010).  "For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some *contemporary knowledge* of which particular listings are infringing or will infringe in the future is necessary." *Id.* at 108 (emphasis added).

From the outset, it is important to note Defendants use the term "alleged" throughout this brief because Plaintiff has yet to produce any court documents detailing convictions, guilty pleas, or civil judgments of counterfeiting for any of the tenants of the Market. Appendix ¶ 16. Logically, proof of direct infringement is required before one can be held liable for contributory infringement, *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1246 n.9 (11th Cir. 2007), which may be difficult given Plaintiff's failure to designate an expert. **Exh. H**.

There is no evidence that Defendants had *contemporary* knowledge of any sales infringing on Plaintiff's trademarks.  In fact, the evidence proves the exact opposite.  It was

6

standard practice for Louis Vuitton's investigators to make an undercover purchase at the Market, draft a report days or weeks later, send the report to Louis Vuitton, and not inform Defendants about the report.  Appendix ¶ 10.  Furthermore, it was standard practice for Louis Vuitton's investigators to not notify Defendants about contemporaneous raids or seizures to therefore allow Defendants to accompany the investigators.  Appendix ¶ 10.  On at least one occasion, Defendant Walker approached the individuals conducting a seizure and was told "This is none of your business."  Appendix ¶ 10.

On August 5, 2010, Defendants politely requested Louis Vuitton to notify Defendants immediately "if you discover that any tenant is selling, marketing or displaying counterfeit merchandise." **Exhibit Q.**  In response, Louis Vuitton refused to assist Defendants, labeling Defendants' actions as "too little too late" and threatened a "seven or eight figure statutory damage award." **Exhibit R.**  In fact, the first time Plaintiff sent any alleged proof to Defendants was on October 13, 2010; approximately 16 months *after* Plaintiff had sent a letter *generally* alleging sales of counterfeit Louis Vuitton items by tenants at the Market.  Appendix ¶¶ 10, 16. <u>Defendants never received contemporaneous notice regarding alleged counterfeit activities; the only notice ever received occurred months or years after the alleged activity took place.</u>

Furthermore, Plaintiff has alleged "willful blindness" which may substitute for actual knowledge.  "To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate."  *Hard Rock*, 955 F.2d at 1149.  This could not be further from the truth.  The facts conclusively show that not only did Defendants investigate Plaintiff's allegations of infringement by certain vendors, but that Defendants complied with *every* single demand Louis Vuitton requested.  Appendix ¶¶ 11–16.  Defendants conducted unannounced random inspections of alleged counterfeiters several times a month, made every purse vendor sign an agreement promising not to sell counterfeit Louis Vuitton goods, posted warning signs at the Market, and

7

evicted several tenants after repeat violations. Appendix ¶¶ 11–16.  The evictions may not have come as quickly as Louis Vuitton wanted, but that is because Mr. Gore believes in providing second chances. Appendix ¶ 13.  Throughout these inspections, Defendants Gore and Walker did not see any counterfeit Louis Vuitton items.  Appendix ¶ 13.  The fact the Vuitton's paid, trained investigators were better able to identify Louis Vuitton items on display is not surprising, Appendix ¶¶ 8–9, and does not support a claim that Defendants had knowledge of the sale of infringing merchandise.

Plaintiff's argument, in its simplest form, is that Defendants should have anticipated tenants would sell or continue to sell allegedly counterfeit Louis Vuitton items, and therefore Defendants had a duty to not only police and enforce Louis Vuitton's trademark right, but to also immediately evict any tenant suspected of selling counterfeit Louis Vuitton items.  This argument is untenable as the Supreme Court and numerous other courts have rejected the "reasonable anticipation" test in regards to contributory infringement.  *Inwood*, 456 U.S. at 854 n. 13; *see e.g.*, *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 110 n.15 (2d Cir. 2010).  Additionally, Plaintiff cannot rely on an argument that Defendants had an affirmative duty to police Louis Vuitton's trademarks for the commercial benefit of Louis Vuitton.  *Hard Rock*, 955 F.2d at 1149.

Because Plaintiff has no evidence that any of the Defendants had actual or constructive knowledge of infringement, it cannot impose contributory liability in this case. Defendants are entitled to summary judgment on Vuitton's claims.

### iii. Evidence Conclusively Shows Individual Defendants are not Liable in the Capacity in Which They Were Sued

Plaintiff cannot prove individual liability of Mr. Gore and Ms. Walker simply by proving that they were agents, employees or officers of the Market who participated in leasing or management. If that were the standard, "the entire sales force of infringing companies would be

8

personally liable." *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1487, n.8 (Cir. 11th 1991). "The individual liability standard does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether he actively participated as a moving force in the decision to engage in the infringing acts, or otherwise caused the infringement as a whole to occur." *Id.*

Specifically, Plaintiff is suing Mr. Gore and Ms. Walker individually because "counterfeiting activity continued to take place at the market and they never took any action" by policing and enforcing Louis Vuitton's trademark rights. **Exhibit C**, at 45:18 - 47:1. Plaintiff recognizes Mr. Gore and Ms. Walker never possessed or sold counterfeit items directly. Appendix ¶ 6. By Plaintiff's own admission, Plaintiff wanted the tenants who allegedly sold counterfeit Louis Vuitton items to be evicted from the Market. **Exhibit C**, at 46:8 – 13. However, Mr. Gore and Ms. Walker were powerless to evict because a tenant leased the space from the Market, and not Mr. Gore or Ms. Walker. Appendix ¶ 4. Logically, only the Market could evict the tenants, which incidentally, has occurred. Appendix ¶ 13. Furthermore, Defendants, including Mr. Gore and Ms. Walker individually, took numerous steps to prevent counterfeiting at the Market despite having no affirmative duty to police Louis Vuitton's trademarks for the commercial benefit of Louis Vuitton. Appendix ¶¶ 11–16; *Hard Rock, 955 F.2d at 1149.* Defendants Gore and Walker are entitled to summary judgment based on the very standard by which Plaintiff sought to hold them liable.

### C. Evidence Conclusively Shows Defendants Acted in Good Faith and Therefore Lack Necessary Intent for Treble Damages and Attorneys' Fees Under § 1117(b) and Willfulness under § 1117(c)

In 2008, Congress created a new remedy based upon a direct violation of section 1114(1)(a) for use of a counterfeit mark. The new remedy provides treble actual damages and attorneys' fees if the plaintiff can prove the defendant "provid[ed] goods or services necessary to

9

the commission of a violation specified in paragraph (1), with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation." 15 U.S.C. § 1117(b)(2).  As explained *supra*, there is simply no evidence that Defendants had such intent because the lease agreements expressly prohibit the sale of counterfeit items and Defendants required all purse vendors agree to not sell counterfeit Louis Vuitton items.  Appendix ¶ 13.  Similarly, there is no evidence Defendants acted willfully under section 1117(c)(2) regarding enhanced statutory damages.  <u>At a minimum</u>, Defendants are entitled to summary judgment that Defendants did not have the requisite intent for sections 1117(b)(2) and 1117(c)(2) to apply.

### III. CONCLUSION

Assuming *arguendo* the Fifth Circuit adopts the liberally construed application of *Inwood* to Plaintiff's cause of action, Plaintiff Louis Vuitton cannot show Defendants had the necessary control and contemporary knowledge of tenant's infringing activity to sustain a finding of contributory liability.  Secondly, Plaintiff cannot show any liability for the individual Defendants because they did nothing in their individual capacities and did not have the actual control.  Finally, at a minimum, Defendants have conclusively shown they acted without the requisite intent for enhanced damages under sections 1117(b)(2) and 1117(c)(2).  Plaintiff not only impermissibly attempted to shift the burden of policing its trademarks onto Defendants, but is now unreasonably attempting to hold Defendants liable.  There is simply no evidence to support Plaintiff's position especially in light of the favorable evidence supporting Defendants.

### **PRAYER**

WHEREFORE, Defendants pray that the Court grant (1) Defendants Motion for Summary Judgment in its entirety, (2) dismiss with prejudice Plaintiff's First Amended Compliant, and (3) any such other and further relief, at law or in equity, as the Court deems proper under the circumstances.

Respectfully submitted,

GUNN, LEE, & CAVE, P.C.
300 Convent, Suite 1080
San Antonio, Texas 78205
(210) 886-9500 Telephone
(210) 886-9883 Facsimile

By: /s/ Ted D. Lee
　　 Ted D. Lee
　　 State Bar No. 12137700
　　 Jason E. McKinnie
　　 State Bar No. 24070247
**ATTORNEYS FOR DEFENDANTS EISENHAUER ROAD FLEA MARKET, INC., BRUCE L. GORE, AND PATRICIA D. WALKER**

11

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 10th day of November, 2011, I electronically filed "Defendants' Motion for Summary Judgment" with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**Steven M. Abbott**
Steven M. Abbott, Attorney at Law
2727 Allen Parkway - Suite 1675
Houston, TX 77019
(713) 467-1669
Fax: 713/467-4936
Email: **abbottsteven@hotmail.com**
ATTORNEY-IN-CHARGE FOR PLAINTIFF

**Harry R. Schafer**
Kenny Nachwalter, P.A.
201 South Biscayne Blvd., Suite 1100
Miami, FL 33131
(305) 373-1000
Fax: (305) 372-1861
Email: **hschafer@kennynachwalter.com**
ATTORNEY FOR PLAINTIFF


                                            /s/ Ted D. Lee
                                            Ted D. Lee